**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

STRATAGENE,

                Plaintiff,

    v.

TAKARA HOLDINGS, INC., and
TAKARA BIO, INC.

              Defendants.

Civil Action No.:  WMN 02 CV 3603

**TAKARA'S REPLY ON ITS MOTION TO**
**QUASH, DISMISS OR TRANSFER**

## **TABLE OF CONTENTS**

**Page**

I.   SUMMARY...........................................................................................1

II.  STATEMENT OF FACTS......................................................................2

III. ARGUMENT.......................................................................................4

    A.   SERVICE OF PROCESS HAS NOT BEEN SHOWN.....................................4

        1.   The Provisions of Rule 4..............................................................6

            (a)  Rule 4 Limits the Manner of Service of Process on a Corporation in a Foreign Country ...........................................................6

            (b)  Congress has Restricted Initiating Federal Litigation by Mail....................7

            (c)  The 1993 Amendment of Rule 4.................................................7

        2.   The Hague Convention................................................................8

            (a)  Takara's Interpretation of "Service" is Consistent with the Supreme Court's.........................................................8

            (b)  Article 10(a) Does Not "Authorize" Service of Process .........................10

            (c)  Japan Objects to Service of Process Except Through the Central Authority Procedure................................................................11

            (d)  The Hague Translation Requirement...............................................13

         3.   The "Authorities" Cited by Strategene Are Poorly Reasoned or Not in Point or Both .....................................................................14

    B.   PERSONAL JURISDICTION.................................................................18

        1.   Applicability of Long Arm Law.......................................................19

        2.   Maryland Long-Arm Law.............................................................19

    C.   Transfer.................................................................................23

    D.   Discovery................................................................................24

IV.  CONCLUSION.................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                               **Page(s)**

*Accord Harry & Jeanette Weinberg Found. v. ANB Inv. Mgmt. & Trust Co.*
    966 F. Supp. 389, 391-92 (D. Md. 1997)……………………………………………….23

*Ackermann v. Levine*
    788 F.2d 830 (2d Cir. 1986)………………………………………….…..15, 17

*Bankston v.Toyota Motor Corp.*
    889 F.2d 172 (8th Cir. 1989)……………………………………… ..……..5, 9, 15, 17

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*
    21 F.3d 1558 (Fed. Cir. 1994)…………………………………………15, 19, 22

*Casio Computer Co. v. Osamu*
    1999 U.S. Dist. LEXIS 14675, *89 - *91 (S.D.N.Y. 1999)……………………..……. 15

*Charas v. Sand Tech. Systems*
    1992 U.S. Dist. LEXIS 15227, *5, *8 n2 (S.D.N.Y. 1992)…………………….…………....15

*Christian Book v. Great Christian*
    768 A.2d 719 (Md.App. 2001)…………………………………………………...21

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*
    447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)………………………………9

*Craig v. General Finance Corp.*
    504 F. Supp. 1033, 1036 (D. Md. 1980)………………………………………………..21

*Fitzgibbon v. Sanyo*
    1994 U.S. Dist. LEXIS 8386, *27 (S.D.N.Y. 1994)……………………………...……15

*Geelhoed v. Jensen*
    277 Md. 220, 352 A.2d 818 (1976)………………………………….……………...21

*Hollingsworth v. Connor*
    764 A.2d 318 (Md.App. 2000)……………………...…………………………19, 20, 22

*Koehler v. Dodwell*
152 F.2d 304 (4th Cir. 1998)……………………….………...……………………14

*Krashes v. White*
    275 Md. 549, 341 A.2d 798 (1975)………………...……………………………..21

*Mylan Labs., Inc. v. Akzo, N.V.*
  2 F.3d 56 (4th Cir. 1993)...........................................................................19, 25

*Nicholson v. Yamaha Motor Co., Ltd.*
  566 A.2d 135 (Md. Ct. Spec. App. 1989)...............................................15, 16

*Nuovo Pignone, SPA v. Versus Storman Asia M/V*
  310 F.3d 374; 2002 U.S. App. LEXIS 23493 (October 31, 2002, Decided)....................9

*Ritz Camera Ctrs. v. Wentling Camera Shops*
  982 F. Supp. 350, 353 (D. Md. 1997)...................................................23

*Volkswagenwerk A.G. v. Schlunk*
  486 U.S. 694, 699, 108 S.Ct. 2104 (1988)..............................6, 9, 10 , 15, 16, 18

*Vorhees v. Fischer & Krecke*
  697 F.2d 574, 575, 576 (4th Cir. 1983)...........................................6, 13, 14

**Statutes**

28 USC 1631..................................................................................1

**Rules**

Rule 4 F.R.Civ. P.......................................................................*passim*

**Other Authority**

Hague Convention, Article 10(a)........................................4-6, 8,10-18

Md. Code, CJ § 6-103(b)(4)..............................................................20

Moore's Fed. Practice 3d § 4 App.07[3].................................................7

Amendment's to Federal Rules of Civil Procedures
146 F.R.D. 401(December 1, 1993)........................................................8

## I.    SUMMARY

The Takara Defendants' motion presents three issues: (1) insufficiency of service of process, (2) lack of personal jurisdiction and (3) transfer.

Stratagene has failed to offer evidence that the defendants were served or to carry its burden of showing that the alleged mailing of documents to the defendants in Japan satisfied the legal requirements for effective service under Rule 4, F.R.Civ.P., and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention").

In asserting personal jurisdiction over Takara Bio and Takara Holdings, Stratagene improperly fails to address them separately—improperly lumping them together—and fails to consider Maryland's long arm law. That law does not authorize assertion of personal jurisdiction based on injury resulting from acts outside the state unless the defendants have established a "purposeful relationship" with Maryland, as that requirement is interpreted in Maryland case law.

This action should be dismissed pursuant to Rule 12(b)(2) and (5), F.R.Civ.P., for lack of personal jurisdiction and insufficiency of service of process. If it chooses, Stratagene may pursue its present claims as counterclaims in the Southern District of California action filed by Takara Bio.

Alternatively, if it is not dismissed, this action should be transferred to the Southern District of California, pursuant to 28 U.S.C. § 1404(a) or § 1631. Stratagene has failed to show any significant contacts of parties and potential witnesses in this civil action with this district, in contrast to the Southern District of California.

1

Stratagene's request for discovery on personal jurisdiction issues does not relate to any pleading of facts or any other indication of possible jurisdiction under the correct legal standard and, therefore, should be denied. If the action is not dismissed for lack of personal jurisdiction or insufficiency of service, and the Court has any doubts about transfer, Takara's request for discovery on the transfer motion should be granted because Takara has shown that Stratagene is likely to have information about the identity and location of potential witnesses in California.

## II.    FACTS

In their Exhibits and Memorandum in support of this motion, Takara Bio and Takara Holdings showed that they are Japanese entities that have not engaged in business in Maryland. (Takara Mem. at 1-2;  Takara Exh. 1, Asada Decl. ¶¶ 4-11 & 23-24)[1]  Those facts are unrefuted.

As background, Takara showed that the dispute between Stratagene and Takara is long-standing, since at least 1997. (Takara Exh. 1, Asada Decl. ¶¶ 17-19) Stratagene argues at length about delays in recent discussions (Stratagene Mem. at 4-7).  Takara, however, never asked Stratagene not to serve the threatened Summons and Complaint in a legitimate way. The record shows that the delay in initiating litigation of this dispute, to the extent that it may have any relevance to the  present motion (which we doubt), was primarily caused by Stratagene.

Stratagene's memorandum does not address the issue of delivery of the Summons and Complaint that it says it sent to Takara Bio and Takara Holdings in Japan.  It has not proffered any proof of service on either defendant.  Although Takara Bio has admitted receipt of that

_____

[1] Takara Exh. 1- 8 accompanied the Motion. Takara Exh. 9 – 10 are submitted herewith.

mailing by an "information clerk" (Takara Exh. 1, Asada Decl. ¶ 20), there is no evidence in the

record regarding delivery to Takara Holdings, and nothing to show whether the Summons and

Complaint were delivered to an officer, director, managing agent or other responsible person at

the offices of either defendant. Proof of service is Stratagene's responsibility. *See* Rule 4(*l*),

F.R.Civ.P.

On the subject of personal jurisdiction, Stratagene has not offered any evidence of acts in

While Stratagene argues at pages 12-13 about issues of Japanese law and policy, it has

not proffered any evidence to rebut the Declaration of Mr. Hirano (Takara Exh. 7) on those

subjects. (As discussed in section III.A.2(c) at 11 below, Stratagene also has missed—or

avoided—the point regarding pertinence of Takara's evidence of Japanese language, law and

policy to understanding Japan's position on Article 10(a).)

On the subject of personal jurisdiction, Stratagene has not offered any evidence of acts in

Maryland by Takara or by a party that is an agent of Takara, critical factors under the Maryland

long-arm statute.  (See section III.B.2 at 19 below.)  Although Stratagene refers at pages 2-3 to

three non-party corporations as a part of a "distribution network" for the accused products, and

refers to distributors of Takara Holdings' sake products (which are irrelevant to this litigation), it

has not offered any evidence that either Takara company had agents (as distinguished from

resellers) in Maryland.

Stratagene fails to show that there were any acts accused of infringement by any

defendant that took place in Maryland, a subject pertinent to both the issues of personal

jurisdiction and  transfer.  In particular, while the Complaint accuses Takara of having "made,

used, offered for sale and/or sold" products accused of infringement, and accused Takara of

3

"actively inducing others to infringe" (Takara Exh. 8, Complaint ¶¶ 6 & 11), Stratagene has not offered any evidence of such acts by Takara in Maryland.

The other fact offered in support of Stratagene's choice of this forum is that it sued Invitrogen Corporation here for infringement of the same patent. Stratagene argues, without evidentiary support, that it sued Invitrogen because it had an interim place of business in Rockville, Maryland. (Stratagene Mem at 19, n.10) (Invitrogen is now headquartered in San Diego, California, in the Southern District of California. *See* Takara Exh. 9)

Stratagene offers no other evidence in support of its choice of forum or in opposition to transfer. In contrast, Takara has addressed all of the pertinent factors. (*See* Takara Mem. at 16-21) A major factor is the availability of compulsory process to secure attendance at trial of third party witnesses. At paragraphs 14-15 and 23-24 of the Asada Declaration (Takara Exh. 1), Takara showed that there are likely to be former Stratagene employees in the Southern District of California who would be relevant witnesses on important issues of inventorship and that no third party witnesses are known to be in the District of Maryland. Since Stratagene is likely to know the identities and addresses of such potential witnesses, Takara has requested discovery on that question if this case is not dismissed.

## III.    ARGUMENT

## A.    SERVICE OF PROCESS HAS NOT BEEN SHOWN

The theory behind Stratagene's attempt to serve process by mail directly to Takara Bio and Takara Holdings in Japan was not entirely clear at the outset of this case. Therefore, Takara's initial Memorandum was broadly directed to bases that Stratagene might conceivably

4

assert. Now, Stratagene's theory is clear. In a nutshell, Stratagene's contends that Rules 4(f) and (h) of the Federal Rules of Civil Procedure, and Article 10(a) of the Hague Convention, authorize service of process in Japan by simply mailing a Summons and Complaint directly to a defendant in that country.

As is apparent from *Bankston v. Toyota Motor Corp.*, 889 F.2d 172 (8th Cir. 1989), cited in our main Memorandum, there are two lines of cases interpreting Article 10(a). *Bankston* addresses the specific issue in the present case of whether mailing judicial documents in the English language to Japan constitutes effective service of process under Article 10(a) and holds that it does not. For the reasons stated at pages 8-11 of our main Memorandum, we submit that the *Bankston* line is better reasoned and should be followed.

It does not appear that any court or commentator has fully explored all the reasons why Article 10(a) does not provide a legitimate basis for service of process by mailing judicial documents in the English language to Japan. We set forth an analysis below to rebut Stratagene's contentions. This analysis first points out that the narrow scope of current Rules 4(d), (f) and (h), and the limitation imposed by Congress on initiating federal litigation through the mail. Next, we look again at the specific terms of the Hague Convention and its Article 10. Then, we consider Japan's statements regarding Article 10 and requiring translations. Finally, we rebut arguments by Stratagene that are not otherwise addressed.

1. **The Provisions of Rule 4**

   (a)    **Rule 4 Limits the Manner of Service of Process
          on a Corporation in a Foreign Country**

In relevant part, Rule 4(h)(2) limits service on a corporation "in a place not within any judicial district of the United States" to "as otherwise provided by federal law" or "in any manner prescribed for individuals by subdivision (f)...." The only form of service-by-mail specifically prescribed by Rule 4(f) requires that the mail must be addressed and sent by the clerk of the court, and is subject to other limitations that are not satisfied in the present case. Rule 4(f)(2)(C)(ii). *See* Takara Mem. § III.B.4 at 11-13.

Note that—in contrast to Rule 4(e)(1), which permits service of process on individuals within the United States pursuant to the law of the state in which the district court is located—Rules 4(f) and (h)(2) do not permit such service outside the United States. Thus, use outside the United States of a state service-by-mail procedure is now excluded. *See Volkswagenwerk A.G. v. Schlunk*, 486 U.S. 694, 699, 108 S.Ct. 2104 (1988); *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575, 576 (4th Cir. 1983) (Hague Convention superceded former Federal Rules 4(e) and 4(i)(1)(D) (1963), which had previously authorized service abroad in accordance with state procedures.)

The part of Rule 4(f) that permits service under the Hague Convention provides that:

> (f) Unless otherwise provided by federal law, service upon a [corporation] from whom a waiver has not been obtained and filed ... may be effected in a place not within any judicial district of the United States:

> (1) by any internationally agreed means reasonably calculated to give notice, such as those means <u>authorized</u> by the Hague Convention....

Rule 4(f)(1) (emphasis added) These words do not directly authorize service in a foreign country by mail.

**(b)      Congress Has Restricted Initiating Federal Litigation by Mail**

The absence from Rule 4(f) and (h)(2) of provisions for service of process by direct mail to persons in a foreign country is not accidental. Twenty years ago, Congress intervened in the rule-making process to restrict the ability to initiate federal litigation through the mail.

In 1982, the Supreme Court forwarded to Congress a proposed amendment of Rule 4 that would have permitted a form of registered or certified mail as a generally available alternative to personal service. Protests led to a major change in the proposed amendment to the Rule. *See* 96 F. R. D. at 116-135 (1982), detailing the history of the initial proposal and subsequent modification.

The amendment to Rule 4 that emerged from Congress and became effective in 1983 did not permit original service by registered or certified mail as a means of acquiring personal jurisdiction. (Pub. L. 97-462. *See* Comments, Cong. Record H 9849 *et seq.* (Dec. 15, 1982), reproduced in Moore's Fed. Practice 3d §. 4 App. 07 [3]) Instead, the 1983 version of the Rule permitted an attempt at service by first-class mail that would become effective only if the person to be served returned a written acknowledgment within twenty days after the date of mailing. If an acknowledgment of service was not received, the mailing would be ineffective and service then would have to be effected under other provisions of the Rule. *See* Moore, 4 App. at 31-33, 37-38, 43-48.

**(c)      The 1993 Amendment of Rule 4**

The relevant parts of Rule 4 were rearranged and clarified, effective in 1993. Former Rule 4(i), relating to direct service-by-mail on foreign defendants was deleted. The waiver of

service provisions were clarified and moved to Rule 4(d). The accompanying Advisory Committee Note emphasized that "It is more accurate to describe the communication sent to the defendant" under the new Rule 4(d) "as a request for waiver of formal service," not "service-by-mail." (146 F.R.D. 519, 561)  The Advisory Committee Notes specifically pointed out the advantage of the waiver procedure with respect to a defendant located in a foreign country.  146 F.R.D. at 521, 563).

The basic provisions for service abroad were moved to Rule 4(f) at the same time. The preamble of Rule 4(f) refers to the waiver procedure. The Advisory Committee Note did not refer to direct service-by-mail in connection with Rule 4(f)(1).  The Note explained that subpart 4(f)(1) (which had been amended to its present form) gives effect to the Hague Convention, noting that "Use of Convention procedures, when available, are mandatory if documents must be transmitted abroad to effect service."(146  F.R.D. at 567-68.  *See* the next section below) Clearly, the Committee was referring to the Hague Convention's "Central Authority" procedures as mandatory (not the direct mail procedure employed in the present case by Stratagene).

2.      **The Hague Convention**

    (a)      **Takara's Interpretation of "Service"**
             **Is Consistent with The Supreme Court's**

Article 1 of the Hague Convention states:

> The present Convention shall apply in all cases, in civil or commercial matters where there is occasion to <u>transmit</u> a judicial or extrajudicial document <u>for</u> <u>service</u> abroad.

(Emphasis added)

8

As explained by the Supreme Court in *Volkswagenwerk, supra*, the Convention's primary innovation was the "central authority" system. 486 U.S. at 698-99, 704. The Supreme Court interpreted Article 1 as making the Hague Convention mandatory, pre-empting inconsistent methods of service prescribed by state law. *Id.* at 699. That is particularly significant in view of the history of Rule 4 and the reluctance of Congress to generally authorize service of process by mail.

*Volkswagenwerk* provides the most authoritative interpretation of the term "service" as used in the Convention. The opinion repeatedly referred to the "service" provisions, concluding that Article 1 refers to service of process in the technical sense. It noted that the Convention delegates intentionally used the French term "signification" (service) in the Convention, rather than a broader term, in order to be more precise and that they intentionally excluded transmissions abroad that do not culminate in service. *Id.* at 699-701. The interpretation of "service" in *Bankston*, 889 F.2d at 173-74 and in Takara's main Memorandum pages 8-11 are consistent with *Volkswagenwerk.*

The most recent Circuit Court decision to address the Article 10(a) question is *Nuovo Pignone, Sp v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002). After considering both lines of Article 10(a) cases, it found the distinction between "send" and "service" was intentional. "Absent a clearly expressed legislative intention to the contrary,' a statute's language 'must ordinarily be regarded as conclusive.' *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)." *Id.* at 384. *Nuovo Pignone* held "article 10(a) does not permit parties to effect service of process on foreign defendants by mail." *Id.* at 385.

9

Because "send" in Article 10(a) does not mean "service of process," Stratagene may not rely on Article 10(a). Its attempt to initiate this litigation by mailing the Summons and Complaint directly to defendants in Japan is ineffective.

**(b)    Article 10(a) Does Not "Authorize" Service of Process**

Stratagene's argument—that Article 10(a) authorizes service of process by mail—also fails because the reference in Rules (f) and (h) to the Hague Convention is limited to "means authorized by the Hague Convention for service abroad of judicial and extrajudicial documents." Rule 4(f)(1). Hague Article 10(a) does not purport to "authorize" any means for service of process. Rather than "authorizing," Article 10(a) simply states that the Convention "shall not interfere with the freedom to send judicial documents" directly to a person by postal channels if the receiving country does not object.

Furthermore, Rule 4(f) does not authorize state service of process procedures for service abroad in this case. *Volkswagenwerk, supra,* made it clear that such procedures are not available for service abroad. There is no procedure available under federal law for service of process in the present case by direct mail to persons in foreign countries. The only direct mail procedure available when delivery is to a corporation abroad is the waiver procedure of Rule 4(d). Article 10(a), as properly interpreted, indicates that sending a notice of litigation and waiver request by direct mail to persons in foreign countries is not precluded by the Hague Convention if the country of destination does not object. That is consistent with the preamble of Rule 4(f), referring to the option of requesting a waiver from a person abroad. Article 10(a)'s

acknowledgment of the freedom to send documents, like a waiver request, to a person abroad is quite different from authorizing service of process upon such a person.

### (c)    Japan Objects to Service of Process Except Through the Central Authority Procedure

Stratagem's memorandum, at page 12-13, misconstrues the reason for referring to the Japanese interpretation of "send" and "service" at pages 9-10 of Takara's main Memorandum. It is not for interpretation of the Hague Convention itself. Rather, the Japanese law, policy and language are relevant to understanding Japan's objections to and limitations of Hague Convention provisions.

In arguing that "send" means "service" as applied to service of process by direct mail to Japan, Stratagene failed to tell this Court that Japan has formally distinguished between sending judicial documents to Japan and service of process, and has objected to the service of documents directly upon a person residing within the territory of Japan.  In particular, Japan issued a statement in 1989 regarding documents sent to Japan by postal channels, summarized as follows on the U.S. Department of State website:

> Japan has not declared that it objects to the sending of judicial documents, by postal channels, directly to persons abroad. In this connection, Japan (in the statement by its representative to the Special Commission of April 1989 on the operation of the Conventions on the Service of Documents Abroad and on the Taking of Evidence Abroad) has made it clear that no objection to the use of postal channels for sending judicial documents to persons in Japan does not necessarily imply that the sending by such a method is considered valid service in Japan; it merely indicates that Japan does not consider it as an infringement of its sovereign power.

U.S. Dept. of State, "6. Article 10(a) - Service by Mail," in SERVICE OF PROCESS IN

JAPAN, available at http://travel.state.gov/japan_service.html ("Dept. of State website") (Takara

Exh. 10) Japan had previously stated its objection to service of documents directly upon a person

in Japan and that it does not recognize unauthorized service as having any legal effect. As the

Dept. of State website explains:

> On April 15, 1983, the Embassy of Japan informed the U.S. Department of State
> that the Japanese Government considers that the service of documents directly
> upon a person residing within the territory of Japan constitutes an exercise of the
> jurisdiction of the United States within the territory of Japan, and that the U.S.
> Government is required to seek approval of the Government of Japan before
> taking such measures. The Government of Japan does not recognize any legal
> effect of the unauthorized service. (Embassy of Japan Note No. E-29 dtd 4/15/83,
> to be found at Department of State File No. P830057-0145.)

*Id.* "Historical Background." As pointed out at pages 9-11 of Takara's main Memorandum,

Japan also has specifically objected to the service provisions in Hague Convention Article 10(b)

and (c).

In summary, Japan distinguishes between "freedom to send" and "service of process,"

and Japan has objected to service of process from abroad except pursuant to the Central

Authority procedure of the Hague Convention. Stratagene's interpretation of Article 10(a) is both

directly contrary to Japan's stated position and would render Japan' insistence on the Central

Authority procedure ineffective. Therefore, this Court should conclude that service of process

cannot be effected by mailing judicial documents directly to persons in Japan.

**(d)      The Hague Translation Requirement**

Article 5 of the Hague Convention permits signatories to require translation of documents into a language of the destination State, at least when the central authority procedure is used. In *Vorhees v. Fischer*, 697 F.2d 574 )(4th Cir. 1983), the Fourth Circuit applied that requirement to documents mailed directly to persons in another country. It held that service of process from the District of Maryland should be quashed where the Summons and Complaint were mailed directly to the defendants in West Germany and did not include a German language translation, as required by Germany under the Hague Convention. *Id.* at 575-76.[2]

Like Germany, Japan requires a translation. The U.S. State Dept. website reports:

[I]n response to a questionnaire circulated in 1978 by the Secretariat of the Hague Conference on Private International Law to all Central Authorities as to internal law or practice concerning language requirements, Japan replied that a translation is required. Unless the party to be served will accept service voluntarily, the documents to be served must be accompanied by a translation into Japanese. A document not accompanied by a translation will be returned to the applicant with the request to attach the required translation.

"Translations," Dept. of State website, *supra*. Therefore, it appears that a further basis for concluding that the service on Takara Bio and Takara Holdings was ineffective is that Stratagene has not shown that the documents were in Japanese or accompanied by a translation. *Vorhees* is persuasive precedent for finding Stratagene's attempted service of process was insufficient in the present case, not only because the attempted service was by direct mailing to a person in Japan

———

[2] In *Vorhees*, dismissal for insufficient service was reversed and the service was quashed instead, apparently because the statute of limitations had run. *See* 697 F.2d at 576. Stratagene has not shown that any similar statute of limitations problem exists in the present case.

without any authorization for that procedure in U.S. law, but also because it was not accompanied by a translation.

Japan's requirement of a translation in the Hague Convention's central authority procedure also indicates another defect in Stratagene's Article 10(a) argument. Having imposed the translation requirement, and having said that "Unless the party to be served will accept service voluntarily, the documents to be served must be accompanied by a translation into Japanese," it is not reasonable to believe that Japan's non-objection to Article 10(a) was intended to permit service of an untranslated Summons and Complaint in the English language, directly by mail to a person in Japan.

### 3.    The "Authorities" Cited by Stratagene Are Poorly Reasoned or Not in Point or Both

In this section, we respond to the remaining, principal arguments and citations of "authority" in Stratagene's Memorandum, showing that they are poorly reasoned or not in point or both. We address them in the order in which they appear in the Memorandum.

At page 10, Stratagene incorrectly contends that a statement in *Koehler v. Dodwell*, 152 F.2d 304 (4th Cir. 1998) is "controlling" on the issue of service-by-mail. That statement is not controlling, pertinent or helpful in determining the effect of mailing a document directly to a person to Japan.  Its reference to Article 10(a) of the Hague Convention is merely incidental *dicta*, without any reasoned analysis. *Koehler* involved Article 10(c) and service in Bermuda by a process server.  *Id.* at 307-308. Also, *Koehler* did not address the earlier Fourth Circuit decision, *Vorhees*, discussed in sections III.B.2(d) above.

*Koehler* also cannot be "controlling," because it is not a holding by the Maryland Court of Appeals on an issue of state law or of the Federal Circuit on an issue to which its law applies. *See Beverly Hills Fan*, 21 F.3d at 1558, 1569, 1571 (applying state law to long arm issues and applying Fed. Cir. law to "stream of commerce" questions.)

The other U.S. Court of Appeals opinion cited by Stratagene on page 10, regarding the service of process issue, is *Ackermann v. Levine*, 788 F.2d 830 (2d Cir. 1986). It involved a question of the effectiveness of service of process issued from a German court, as considered in a proceeding to enforce a German default judgment in the Southern District of New York. *Id.* at 840. In considering the terms "send" and "service" in the Hague Convention, *Ackermann* did not consider the distinction in U.S. law between *sending* a Summons and Complaint with a waiver request and *service* of process. Indeed, Rule 4 was not clarified on that point until several years later in 1993. (See section III.A.1(c) at 7-8 above) *Ackermann* also did not consider the position of Japan in interpreting "send" and "service." *Bankston,* which held that mailing judicial documents in the English language to a person in Japan does not constitute effective service of process, expressly chose not to follow the *Ackermann* line. 889 F.2d at 173-74 .

We note also that district courts in the Second Circuit have distinguished *Ackermann, supra,* cited *Volkswagenwerk, supra,* and followed *Bankston, supra,* in cases involving Japan, because Japan does not allow service of process by mail. *Casio Computer Co. v. Osamu Sayo,* 1999 U.S. Dist. LEXIS 14675, *89-*91 (S.D. N.Y. 1999); *Fitzgibbon v. Sanyo Sec. Am., Inc.,* 1994 U.S. Dist. LEXIS 8386, *27 (S.D. N.Y. 1994); *Charas v. Sand Tech. Systems, Int'l, Inc.,* 1992 U.S. Dist. LEXIS 15227, *5, *8 n2 (S.D. N.Y. 1992).

The only Maryland state court decision cited by Stratagene *is Nicholson v. Yamaha Motor Co., Ltd.*, 566 A.2d 135 (Md. Ct. Spec. App. 1989), *cert. den.* 569 A.2d 1242 (Md. 1990). *Nicholson* rejected the "sloppy draftsmanship" rationale of *Ackerman*. The rationale adopted in *Nicholson* regarding Article 10(a) is *dicta* (the dismissal was affirmed for failure to state a cause of action). *Id.* at 697-98, 710-21. It also is out-dated, because former Rule 4(e) and (i), F.R.Civ.P. (1963) and the state law procedures, which *Nicholson* cited, are no longer in effect. *See* sections III.A.1.(a) & III.A.2(b) at 6, 10-11 above.

Further, the presumption on which *Nicholson's dicta* rests was based on an incomplete record, *see* 80 Md. App. at 709-10, and is irrelevant to the issue in the present case. *Nicholson* presumed Japan was aware of former federal Rule 4(i) (1963) and possibly the Maryland service-by-mail rule when it adopted the Hague Convention, and presumed Japan accepted such service. The *Nicholson* court misconstrues Japan's 1989 reservation regarding documents sent through postal channels and apparently was unaware of the 1983 notice by Japan, requiring its approval before the service of documents directly upon a person residing in Japan. (*See* Dept. of State website (Takara Exh. 10) quoted in section III.A.1(c) at 7-8 above.) The notices rebut the presumption that Japan accepted such service. Also, former Rule 4(i) is irrelevant today to the question in the present case of whether direct <u>mailing by a party</u> to a person in Japan is effective service of process, because the only direct mailing in former rule 4(i) is the procedure now in Rule 4(f)(2)(C)(ii), which requires that service by mail be addressed and <u>dispatched by the clerk of the court</u>. *See* section III.A.1(a) at 6 above; Takara Mem. at 12-13.

Stratagene string cites a number of district court cases on page 10. None of those cases took into account the Hague Convention's selection of "service" to be "more precise," as

16

explained in *Volkswagenwerk*, 486 U.S. at 701. Only a few of those cases touch on the Japanese law regarding service of process in Japan which—as discussed above—has led district courts in the Second Circuit to distinguish *Ackermann*. Those few were decided before the 1993 changes in Rule 4, discussed in section III.A.1(c) at 7-8 above.

At pages 10-11 and 13, Stratagene relies on a 1991 pronouncement of the U.S. Department of State, which disagreed with *Bankston*. While the State Department is a useful source of general information, its statement cited by Stratagene is neither current nor authoritative. Indeed, the current State Department statement about Service of Process in Japan includes a bold type disclaimer:

> THE INFORMATION IN THIS CIRCULAR RELATING TO THE LEGAL REQUIREMENTS OF SPECIFIC FOREIGN COUNTRIES IS PROVIDED FOR GENERAL INFORMATION ONLY AND MAY NOT BE TOTALLY ACCURATE IN A PARTICULAR CASE.

Dept. of State http://travel.state.gov/japan_service.html website, *supra.*

Addressing the issue of whether Article 10(a) of the Hague Convention permits service of process by simply sending documents, the State Dept. website now simply states:

> Over the past several years several cases in the United States have been decided in which the courts, noting the use of the verb "to send" in Article 10(a) whereas other provisions of the Convention including Article 10(b) and (c) refer to "service" of documents. Some courts have concluded that the Convention does not permit "service of judicial documents by mail". Other courts have concluded that the Convention does permit such service.

*Id.*, "Historical Background." That website also warns that

17

persons wishing to enforce a judgment issued by a court in the United States might encounter problems in Japan if service were accomplished by mail. (See March 14, 1991, the Department of State, Office of the Legal Adviser ltr. to the Administrative Office of the U.S. Courts and the National Center for State Courts regarding this case, 30 Int'l Leg. Mat. 260 (1991).)

*Id.*, "6. Article 10(a) - Service by Mail."

At pages 10-11, Stratagene purports to discuss the historical development of the Hague Convention with respect to the term "service"; however, that discussion fails to consider the care with which the term "service" was selected, as explained in *Volkswagenwerk*. (*See* section III.A.2(a) at 8-10 above)

Contrary to the suggestion at page 11 of Stratagene's Memorandum, one cannot draw any conclusions about the meaning of Article 10(a) from its placement in the Convention. Article 10 is not a list of alternative forms of service; it simply points out activities other than service via a central authority that are not precluded by the Convention if permitted by the sending country and not objected to by the receiving country. One of them, provided for in Article 10(a), permits sending judicial documents (which could be a notice of litigation and waiver request) by direct mail to persons in a foreign country if law of the country of origin permits and the country of destination does not object. Clearly, that is an appropriate subject for the Convention to discuss in Article 10 along with the non-Convention procedures for service of process referenced in Article 10(b) and (c). (*See* section III.B.2.(b) above)

**B.     PERSONAL JURISDICTION**

18

Stratagene's memorandum totally fails to address the threshold, jurisdictional question: Can personal jurisdiction be obtained under Maryland law on the facts pled? The answer is "NO," because Maryland's long arm law has not been satisfied.

**1.    Applicability of Long Arm Law**

Consideration of the applicability of the forum state's long-arm law is a necessary step in determining whether a district court may exercise personal jurisdiction. *See Beverly Hills Fan*, 21 F.3d 1558, 1569 (Fed. Cir. 1994). Decisions of the state's highest court are controlling. *Id.* at 1569. Prior opinions of this Court, the Fourth Circuit and Maryland's Court of Special Appeals have persuasive value regarding Maryland long-arm jurisdiction issues. *See Mylan Labs. v. Akzo,* 2 F.3d 56, 61 n. 5 (4th Cir. 1993).

Regardless of whether the *prima facie* showing standard is applied, as Stratagene contends at page 14,  or the preponderance of the evidence standard is applicable because the parties have offered evidence, Stratagene has failed to carry its burden. Stratagene has not demonstrated that the Maryland long arm law authorizes assertion of personal jurisdiction based on the pleadings and the record before the Court.

**2.    Maryland Long-Arm Law**

In order for a Maryland court to assert personal jurisdiction over an out-of-state defendant, it must apply the Maryland long arm statute, Maryland Code, Courts and Judicial Proceedings ("CJ") section 6-103, and its judicial interpretations. (*See Hollingsworth & Vose v. Conner,* 764 A.2d 318, 323 (Md. Ct. Spec. App. 1999)) The general provisions of section 6-103 are:

§ 6-103. Cause of action arising from conduct in State or tortious injury outside State.

(a)  Condition.- If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b)  In general.- A court may exercise personal jurisdiction over a person, who directly or by an agent:

> (1) Transacts any business or performs any character of work or service in the State;

> (2) Contracts to supply goods, food, services, or manufactured products in the State;

> (3) Causes tortious injury in the State by an act or omission in the State;

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

> (5) Has an interest in, uses, or possesses real property in the State; or

> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Where, as in the present case, a plaintiff seeks to rely on Md. Code, CJ §6-103(b)(4), relating to injury by an act or omission outside the state, it is essential under Maryland law that there be evidence of some act by which the defendant purposefully availed himself of the privilege of conducting activities within Maryland. *Hollingsworth & Vose,* 764 A.2d 318, 323,

328, 330 (Md. Ct. Spec. App. 1999); *see generally id.* at 326-31) This is sometimes referred to as a requirement for a "purposeful relationship" with Maryland. (*See id.* at 325)

The "purposeful relationship" requirement is not overcome by either Maryland's interest in providing a forum for actions arising out of injury to Maryland residents or inefficient handling of a lawsuit because another defendant could be sued in Maryland. *Id.* at 325. "[W]e do not sacrifice due process, fair play, and adherence to judicial precedent on the altar of judicial efficiency." *Id.*

Since preparing our main Memorandum, we have learned that, as this Court has explained, subsections (b)(3) & (b)(4) of the Maryland long arm statute do not extend to the outer limits of constitutional due process. *Craig v. General Finance Corp.*, 504 F. Supp. 1033, 1036 (D. Md. 1980)( "Not all subsections of the Maryland statute, however, are coterminous with due process . . . [T]hose parts of Maryland's long arm statute that have been codified as subsections (b)(3) and (b)(4) were intended by the legislature to be more restrictive.")
The Maryland Court of Special Appeals has traced the authority for this position to two state Court of Appeals cases: *Geelhoed v. Jensen*, 277 Md. 220 (1976) and *Krashes v. White, 275 Md. 549 (1975)*:

> In *Geelhoed*, the Court of Appeals stated that subsections (b)(3) and (b)(4) were more restrictive than certain long-arm statutes, referring to Illinois, because they distinguished between a tortious act and a tortious injury. 277 Md. at 223 n. 3. In *Krashes*, the Court of Appeals described the Maryland long-arm statute as having a constitutional reach, but then suggested that there might be situations not reached by the statute but which are constitutional. 275 Md. at 558-59.

*Christian Book Distr., Inc. v. Great Christian Books, Inc.*, 768 A.2d 719, 732 (Md. Ct. Spec. App. 2000). *See id.* at 730-732.

The Maryland approach under section 6-103(b)(4) is well illustrated by the opinion in *Hollingsworth & Vose, supra*. That case was an appeal from a jury verdict for awarding over two million dollars for damages resulting from lung cancer (mesotheilioma) induced by asbestos in Kent cigarettes. Plaintiff-appellee Connor was a Maryland resident. 764 A.2d at 325. Defendant-appellant Hollingsworth & Vose (H&V) was the manufacturer of the asbestos-containing filters used in Kent cigarettes. H&V made the filters in Massachusetts and shipped them to cigarette plants in Kentucky and New Jersey. *Id*. at 322, 331. The appellee sought to rely on the fact that H&V profited from the sales of filters and was involved in marketing the cigarettes. *Id*. at 324. The Court rejected the plaintiff-appellee's "stream of commerce" argument as incompatible with the Maryland long-arm statute and reversed the judgment. *Id*. at 328.

Stratagene's reliance on the interpretation of the Virginia long arm statute in *Beverly Hills Fan, supra,* is misplaced; it is Maryland's law and policy to which this Court should look in the present case. The following statements of the Maryland long arm policy by the Maryland Court of Special Appeals in *Hollingsworth & Vose* limit the reach of Maryland's arm:

> If we were to follow appellee's reasoning, then all manufacturers will be subject to personal jurisdiction for the acts of retailers. Such a result would effectively emasculate the due process clause, and the reach of the long-arm statute would approach infinity.

(*Id*. at 324)

* * * *

> We choose not to substitute "many-tentacled" for "long-arm" in the statute so that all distributors, manufacturers, and retailers are automatically embraced and subject to personal jurisdiction simply because a company in its supply chain happens to be accessible.

(*Id.* at 324)

As far as constitutional due process is concerned, this Court has recognized that "in recent years the Fourth Circuit has taken a somewhat restrictive view of the constitutional reach of long-arm statutes, emphasizing that the inquiry is not one of mere reasonableness. Rather, the Fourth Circuit has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there." *Ritz Camera Ctrs. v. Wentling Camera Shops,* 982 F. Supp. 350, 353 (D. Md. 1997). *Accord Harry & Jeanette Weinberg Found. v. ANB Inv. Mgmt. & Trust Co.*, 966 F. Supp. 389, 391-92 (D. Md. 1997).

Stratagene has failed to show that the present defendants have the required "purposeful relationship" with Maryland. The Maryland long arm law does not authorize the assertion of personal jurisdiction in the present civil action. Therefore, the action must be dismissed.


## C.    Transfer

The parties and potential witnesses in this civil action have no significant contacts with this district, in contrast to the Southern District of California to which this action should be transferred, if it is not dismissed. (*See* Takara Exh. 1, Asada Decl. ¶¶ 7-8, 13-15 & 23-24,  and section II at 2 above). The weight ordinarily given to a plaintiff's choice of forum is greatly diminished when the plaintiff and likely witnesses lack contacts in that forum.

Stratagene offers no pertinent evidence in support of its choice of forum or in opposition to transfer, only argument.  In contrast, Takara has addressed all of the pertinent factors.  (*See* Takara Mem. at 16-21)

A major factor is the availability of compulsory process to secure attendance at trial of third party witnesses. At paragraphs 14-15 and 23-24 of the Asada Declaration (Takara Exh. 1), Takara showed that there are likely to be former Stratagene employees who would be relevant witnesses in the Southern District of California on the important issue of inventorship and that no third party witnesses are known to be in this district. Stratagene's opposition avoids that issue, although Stratagene is likely to be informed regarding the location of such persons. Therefore, Mr. Asada's declaration on this subject should be accepted as true.

Stratagene's sole arguments for selection of this district are (1) that it filed an action here on the same patent against another California-based company, Invitrogen, and (2) that the tort of patent infringement occurs at the place of infringement, and Takara products have been offered for sale by third party distributors and purchased in this forum. (*See* Stratagene Mem. at 18; Takara Exh. 9 and section II at 2 above). Little weight can be given to the other litigation, in view of the fact that it is between two Southern California companies and in view of the convenience facts of record in the present case. As far as allegations of patent infringement are concerned, Stratagene has neither pled nor shown acts of infringement by the defendants in this district. (Complaint, Takara Exh. 8) Defendants did not and do not do business here. (*See* Takara Exh. 1, Asada Decl. ¶¶ 7-8 & 24)

**D.     Discovery**

Discovery by Stratagene on the issue of personal jurisdiction is not warranted because the pleadings contain no specific facts that could establish the requisite contacts with Maryland and

Takara has provided undisputed evidence of lack of sufficient contacts with Maryland. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993)

If this action is not dismissed and the Court has any doubts about transfer, Takara's request for discovery on the transfer  motion should be granted because Takara has shown that Stratagene is likely to have information about the identity and location of potential witnesses in California.

## IV.    CONCLUSION

This civil action should be dismissed for lack of effective service of process and lack of personal jurisdiction. If not dismissed, it should be transferred to the Southern District of California.

TAKARA HOLDINGS, INC. and
TAKARA BIO, INC.

Dated:  May 11, 2003

/s/  Linda Liu Kordziel
Linda Liu Kordziel
Md. Bar No. 15212
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone:  (202) 783-5070
Facsimile:  (202) 783-2331

OF COUNSEL:
John B. Pegram
John T. Johnson
FISH & RICHARDSON P.C.
45 Rockefeller Plaza, Suite 2800
New York, NY 10111
San Diego, CA  92122
Telephone:  (212) 765-5070

25

Facsimile:  (212) 258-2291

Frank P. Porcelli
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone:  (617) 542-5070
Facsimile:  (617) 542-8906

Tamara D. Fraizer
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071