## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

STRATAGENE                    :
                              :
v.                            :        Civil Action WMN-02-3603
                              :
TAKARA HOLDINGS, INC., <u>et al.</u>    :

### <u>MEMORANDUM</u>

Before the Court is Defendants' Motion to Quash Service of Process, Dismiss for Inadequate Service of Process, and Dismiss for Lack of Personal Jurisdiction, or in the alternative, to Transfer. Paper No. 7. The motion is ripe for the Court's consideration. Upon a review of the pleadings and applicable case law, the Court determines that the motion will be denied.

### I. FACTUAL BACKGROUND

This case arises out of a dispute between an American plaintiff and Japanese defendants, involving alleged patent infringement. Plaintiff, Stratagene, is a biotechnology company formed under the laws of Delaware, with its principal place of business in California. Defendants, Takara Holdings, Inc.[1] and Takara Bio, Inc. (together "Takara") have their

---

[1] Prior to April 1, 2002, the company was named Takara Shuzo, Co., Ltd., and its business endeavors included production and sale of sake as well as biotechnology products. On April 1, 2002, the company was restructured, Takara Shuzo, Co., Ltd. was renamed "Takara Holdings Inc.", and two subsidiaries were created: Takara Bio, which received the biotechnology business and Takara Shuzo Inc., which received the sake business.

principal place of business in Japan.  Takara Bio, Inc., is a
subsidiary of Takara Holdings, Inc. that engages in
biotechnology.

Stratagene is the holder of United States Patent Number
5,556,772 (the '772 patent), which is used for polymerase
blends.  Defendants are assignees of rights to United States
Patent Number 5,436,149 (the '149 patent), which is also used
for polymerase blends.  For several years, Stratagene and
Takara have had a relationship centered around their
biotechnology patents.[2]  Stratagene brought the instant
complaint alleging that Takara is infringing on Stratagene's
'772 patent.

Stratagene filed the complaint in this action on November
4, 2002.  For several months thereafter, Stratagene consulted
with Takara's counsel in an attempt to settle the dispute
without going to trial.  As the deadline for service of
process approached, Stratagene and Takara discussed the
possibility of Takara's waiver of service in exchange for
extra time to submit an answer to Stratagene's complaint.
Stratagene agreed to accept Takara's offer if they could come

---

[2] In 1996, Stratagene began licensing claims of the '149
patent from Takara.  In 1997, Stratagene offered Takara non-
exclusive license of the '772 patent, however, due to a
dispute about the inventor of the '772 patent, Takara did not
accept Stratagene's offer.

to a consensus on a confidentiality agreement.  On March 3, 2003, Stratagene moved for an extension of time for service, which was granted by this Court.  During an attempt to settle on March 12, 2003, Takara's counsel indicated that Takara would not agree to waive service, nor would Takara's counsel agree to accept service on behalf of Takara.

On March 24, 2003, Stratagene attempted to effect service of process by mailing the summons and complaint to Takara's home office in Japan, via registered mail.  Following the mailing, Takara contacted Stratagene to say that it was willing to waive service if Stratagene would send the waiver form.  Stratagene accused Takara of using dilatory tactics and replied that it did not need Takara's waiver of service as the summons and complaint had already been served in accordance with the Federal Rules and the Hague Convention.

Takara did not file an answer to the complaint, but instead, filed the present motion in this action, and a separate suit against Stratagene for declaratory judgment in the Southern District of California.  In its separate suit, Takara alleges the assignor/inventor of the '149 patent should be named as one of the inventors of the '772 patent.  Takara's complaint was recently transferred to this Court from the Southern District of California.  In the pending motion,

Takara alleges that service of process was inadequate and that this Court does not have jurisdiction to hear the case.

## II. Discussion

### A. Service of Process

Defendants contend that Plaintiff failed to properly serve them in their capacity as foreign defendants, that service of process should be quashed, and the case should be dismissed.

Federal Rule of Civil Procedure 4(f)(1) governs service of process on foreign defendants. The rule explains that service may be effected, "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. . . ." Fed. R. Civ. P. 4(f)(1). The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") provides internationally accepted methods of process for litigants who are citizens of countries party to the Convention. The Convention instructs each signatory nation to designate a Central Authority that will be available to receive requests for service. Documents may be served by the Central Authority, through diplomatic or consular agents. Article 10 of the Convention provides for other methods of

service as well, provided the state of destination does not object.[3]  Article 21 allows each signatory nation to the treaty to object to any provisions of the Convention with which they do not agree.[4]  If a party objects to certain provisions of the Convention, then it is not bound by those provisions.

As permitted by the provision in Article 21, Japan objected to provisions (b) and (c) of Article 10 of the Hague Convention.  Provisions (b) and (c) make specific references

---

[3] Article 10 of the Hague Convention, provides in pertinent part:

> [p]rovided the State of destination does not object, the present Convention shall not interfere with -
>     (a) the freedom to send judicial documents, by postal channels, directly to persons abroad.
>     (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>     (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention, Article 10 (emphasis added).

[4] Article 21 states in pertinent part: "Each contracting State shall similarly inform the Ministry, where appropriate, of...(a) opposition to the use of methods of transmission pursuant to articles 8 and 10."

to "service" of legal documents, while (a) refers only to "sending" legal documents.  The inconsistent wording has been cause for much commentary by the United States Department of State (State Department), in case law, and among legal scholars.  Two lines of cases have emerged, offering contradictory direction on the issue of whether "send" in Article 10(a) may be interpreted as "serve".  <u>See</u> <u>Ackerman v. Levine</u>, 788 F.2d 830 (2nd Cir. 1986) (concluding that "send" in Article 10(a) may be interpreted as "serve"), <u>contra</u> <u>Bankston v. Toyota Motor Corp.</u>, 889 F.2d 172 (8th Cir. 1989) (holding that Article 10(a) does not include service by mail).

Plaintiff argues that Article 10(a) must include service of process by mail because if it did not, then Article 10(a) would be superfluous.  Pl's. Opp. at 12.  A district court in the Third Circuit opined that, "if Article 10(a) did not apply to service of process . . . it would have been illogical for the drafters to include in the midst of provisions addressing alternative methods of service."  <u>Eli Lily and Co. v. Roussel Corp.</u>, 23 F.Supp.2d 460, 473 (D.N.J. 1998).  A district court in the Ninth Circuit found that the drafters used the word "transmission" as a synonym for "service" in Article 21, and therefore, "it would be error to strictly apply the principle of 'expression unius est exclusio alterius' to the word 'send'

6

in Article 10(a)." R. Griggs Group Ltd. v. Filanto Spa, 920
F.Supp. 1100, 1105 (D. Nev. 1996). That court also found that
at least two countries, Canada and Czechoslovakia, submitted
declarations interpreting Article 10(a) as including service
of process. Id. at 1105.

The goal of the Hague Convention, as stated in its
preamble, is to "ensure that judicial and extrajudicial
documents to be served abroad shall be brought to the notice
of the addressee in sufficient time," and to "improve the
organisation of mutual judicial assistance for that purpose by
simplifying and expediting the procedure. . . ." Plaintiff
argues that Japan had the opportunity to object to Article
10(a) at the time of ratification and chose not to. In 1989,
Japan was asked to explain its position on Article 10(a), and
it stated that service by mail did not affect its autonomy.
Moreover, Plaintiff claims that the State Department supports
the position that Article 10(a) includes service by mail. See
30 I.L.M. 260 (1991).

Defendants maintain Article 10(a) refers to legal
documents excluding summonses and complaints. Defs.' Mot. at
9. Defendants insist that the Court follow the Bankston line
of cases, holding that Article 10(a) could not possibly
include service by mail because under the rules of statutory

7

construction, the drafters would have used the word "service" if they meant to say service.

The Fourth Circuit has not decided the issue, however, in a case interpreting the wording of Article 10(c) of the Hague Convention, the Fourth Circuit commented in dicta that Article 10(a) includes service by mail.  See Koehler v. Dodwell, 152 F.3d 304, 308 (4ᵗʰ Cir. 1998).  In Koehler, the court considered whether Article 10(c) should be read so strictly as to only allow persons employed by the destination state to serve process, and concluded that to do so would be "a tortured reading."  Id. at 307.  The court continued that "such a restrictive interpretation simply does not fit within the context of the liberal service options provided in the treaty, which include service by mail."  Id. at 308 (citing Hague Convention Article 10(a)).  Although not binding precedent, the Koehler court's interpretation of the Hague Convention as containing "liberal service options" offers guidance for future decisions.

Recent decisions of district courts within the Fourth Circuit have produced conflicting results.  See Randolph v. Hendry, 50 F.Supp.2d 572 (S.D.W.V. 1999) (finding that Article 10(a) includes service by mail, but quashing service because it was not in conformity with an aspect of West Virginia law).

In <u>Randolph</u>, the court found that "[t]he Hague Convention is intended to provide methods of service, and Article 10(a) clearly describes one such method."  <u>Id</u>. at 577, <u>contrast</u> <u>Fleming v. Yamaha</u>, 774 F.Supp. 992 (W.D.Va. 1991)(quashing service of process because service was sent directly to the Japanese defendant and not through the Central Authority as required by the Hague Convention); <u>Knapp v. Yamaha Motors</u>, 60 F.Supp.2d 566 (S.D.W.V. 1999)(finding service upon Japanese defendant defective because service was not effected through Japan's Minister of Foreign Affairs or other consular channels).  In <u>Knapp</u>, the court cited 1 B. Ristau, <u>International Judicial Assistance (Civil and Commercial)</u> §4-3-5(2) at 150, which attributed "the use of the word 'send' instead of 'service' in Article 10(a) to careless draftmanship rather than an intent on the part of the drafters to draw a distinction between judicial documents sent through the mails for the purpose of service and those sent for other purposes." <u>Knapp</u>, 60 F.Supp.2d at 570.  The <u>Knapp</u> court rejected this interpretation and concluded that "[t]he plain language of Article 10(a) provides for the sending of judicial documents. It does not provide an additional method of service."  <u>Id.</u> at 571.

    Older decisions made by district courts within the Fourth

Circuit found service by registered mail effective under the Hague Convention.  See Weight v. Kawasaki, 597 F.Supp. 1082 (E.D.Va. 1984)(relying on the Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (1983), which stated that Japan has not objected to service through postal channels); Hammond v. Honda, 128 F.R.D. 638, 641 (D.S.C. 1989)(holding that "[f]orbidding direct service by mail would render subpart (a) extraneous material").

In Maryland, the only case decided on this issue thus far is Nicholson v. Yamaha, 80 Md.App. 695 (1989), which held that under Article 10(a), the Hague Convention permits service by mail.  The Maryland Court of Special Appeals found that service could be effected on a Japanese defendant pursuant to the Maryland rule[5] because Japan issued a statement that service by mail did not infringe on its sovereignty.  Id. at 710.

The State Department interprets Article 10(a) as including service by mail.  See Defs.' Exh. 10, printed copy of the State Department website.  On its website, the State

_____

[5] Maryland's service of process rule, Md. Rule 2-121(a), is substantially the same as Fed.R.Civ.P. 4.

Department offers instructions for filing suit against a Japanese defendant. Plaintiffs are advised to serve Japanese defendants through Japan's "Central Authority". The website informs plaintiffs that Japan has not expressly rejected sending summonses and complaints via registered mail.[6] Also, the State Department cautions that while service by mail appears to be possible, plaintiffs may encounter difficulty enforcing a judgment in Japan if process is served by mail.

The State Department also issued a statement criticizing the Eighth Circuit's decision in Bankston. 30 I.L.M. 260 (1991). The statement said, "the decision of the Court of Appeals in Bankston is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country. . . ." Id. The State Department emphasized that the Japanese official's statement in 1989 that service by mail does not violate Japan's autonomy, should have changed the outcome of the case if the court had been aware of its

---

[6] A Japanese official issued a statement, addressing the subject in 1989, stating that Article 10(a) of the Hague Convention does not infringe on its autonomy. The Japanese official did not address the issue of whether the language in Article 10(a) refers to service of process or the sending of judicial documents other than summons and complaint. See 28 I.L.M. 1558 (1989).

existence.  In the statement, the State Department concluded that judgments in United States courts based on service by mail of Japanese defendants are "capable of recognition and enforcement throughout the United States", even though they may not be "capable of recognition and enforcement" by Japanese courts.

The purpose of Fed.R.Civ.P. 4 is to give the defending party notice of the complaint.  <u>See</u> <u>American Football League v. National Football League</u>, 27 F.R.D. 264, 269 (D. Md. 1961)("The purpose of the rule is to bring home to the defendant notice of the filing of the action,"); <u>Oklahoma Radio Assoc. v. Federal Deposit Ins. Corp.</u>, 969 F.2d 940 (10th Cir. 1992) ("Personal service under Fed.R.Civ.P. 4 serves two purposes: notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit.").

Here, Plaintiff gave a courtesy copy of the complaint to Takara's counsel in 2002 and mailed a summons and complaint to Takara's headquarters in Japan, arguably in accordance with the Hague Convention.  Now, Takara claims it was served improperly and that this case should be dismissed or at the very least, service should be quashed.  Takara claims it is injured because it was not served properly, yet Takara managed

to respond with a lawsuit of its own.  Takara's counsel met with Stratagene for months following the filing of the instant complaint, prior to the service of process, in an effort to effect a settlement.  Pl's. Opp. at 3-6.  Therefore, the purpose of service has been met here--Takara received adequate notice of the litigation.

Defendants argue that even if Plaintiff's service was effective, the fact that they did not supply Defendants with a Japanese translation of the documents should be enough to quash service.  Defs.' Reply at 5.  The State Department website informs readers that Japan did not officially require translation of legal documents when it voiced its objections to portions of the Hague Convention.[7]  In an unofficial survey, circulated by the Secretariat of the Hague Conference on Private International Law, however, Japan replied that it requires translations, unless the party being served will voluntarily accept service of untranslated documents.  Defs.' Exh. 10, printed version of the State Department website.  In Weight, the district court for the Eastern District of Virginia found that the Hague Convention requires translation of documents only when it discusses the Central Authority.  597 F.Supp. at 1086.  The court reasoned that because Article

---

[7]  http://travel.state.gov/japan_service.html.

10(a) does not mention a translation requirement, translation is not required unless sent through the Central Authority. Id. Article 5 instructs litigants that the Central Authority may require litigants to send translated documents.[8] Because this Court agrees with the rationale in Weight, and because Japan's response to the survey was unofficial and not part of any treaty negotiations, the Court concludes that Stratagene need not have sent a Japanese translation if it was not serving the summons and complaint through the Central Authority.

In considering whether Article 10(a) includes service by mail, this Court notes its agreement with the rationale of Lily and Griggs, the cases cited by Plaintiff. As stated in Lily, "if Article 10(a) did not apply to service of process . . . it would have been illogical for the drafters to include in the midst of provisions addressing alternative methods of service." 23 F.Supp.2d at 472. Further, the Griggs court noted that because the Convention uses synonyms for service in other Articles, it is erroneous to apply strict construction in Article 10(a). 920 F.Supp. at 1105. Additionally, this

---

[8] Article 5 of the Hague Convention, states in pertinent part, "If the document is to be served under [the Central Authority], the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed."

14

Court notes the Fourth Circuit district court cases holding Article 10(a) includes service by mail and the Fourth Circuit dicta in <u>Koehler</u>, which described the Convention as having liberal service options.  Accordingly, this Court concludes that Article 10(a) includes service by mail and that Plaintiff effectively served Defendants in this action.

### B. Jurisdiction and Transfer

Defendants challenge this Court's exercise of jurisdiction over the instant case because they allege that the Maryland long-arm statute does not reach them and exercise of jurisdiction violates their due process rights.  Defendants insist that they have not conducted any business in Maryland, and do not pay taxes, nor own property in Maryland. Defendants argue that the Maryland long-arm statute allows a court to exercise general personal jurisdiction over companies that are registered in Maryland or do business in Maryland. Takara argues that Maryland law does not consider a company to be "doing business" in Maryland if the company is not paying taxes or maintaining property in the state.  <u>Id</u>. at 13.

In support of its argument, Takara cites <u>Yangming Marine Transport Corp. v. Revon Products U.S.A., Inc.</u>, 311 Md. 496 (1988), in which a Chinese plaintiff was not permitted to sue a Maryland defendant, in Maryland courts, unless it met the

requirements of "doing business" under a closed-door statute,
Md. Code §7-301.[9]  Takara mistakenly relies on Maryland's
application of the "doing business" test under the closed-door
statute, which is a higher standard than Maryland's long-arm
statute.

Discussion in <u>Yangming Marine Transport</u>, however,
provides insight into the reach of Maryland's long-arm
statute.  At one time, the closed-door statute existed as the
test for assessing personal jurisdiction over foreign
corporations, but this statutory test was repealed as to
service of process in 1967.  <u>Yangming Marine Transport</u>, 311
Md. at 503.  Under Md. Code §6-103(b)(1) (the "long-arm
statute"), "Maryland may now assert personal jurisdiction over
a foreign corporation that 'transacts any business' in the
State." <u>Id</u>.  Maryland's long-arm statute is much less
stringent than its closed-door statute.  The Maryland Court of
Appeals "has repeatedly stated that §6-103 represents a
legislative effort to expand the boundaries of in personam
jurisdiction to the maximum extent permitted by the Due
Process Clause of the Fourteenth Amendment." <u>Id</u>.  "The

---

[9] A closed-door statute is used to prohibit out-of-state
Plaintiffs from forum shopping and taking advantage of
Maryland courts without complying with Maryland corporate
registration requirements.

'transacting business' test under §§ 6-103(b)(1) requires far fewer contacts with the State than did the "doing business" test." Id.

Takara also cites Hollyanne Corp. v. TFT, Inc., 199 F.3d 1304 (Fed. Cir. 1999), to support its argument that this Court lacks jurisdiction. "Where the cause of action is alleged infringement of patents, Hollyanne held that 'for there to be specific personal jurisdiction over [defendant] in [the forum], [plaintiff] would have to allege that [defendant] did one of those listed activities in [the forum].'" Defs.' Mot. at 14 (quoting Hollyanne, 199 F.3d at 1308). Takara alleges that it did not engage in any activities in Maryland, and therefore, this Court does not have specific jurisdiction over it.     Stratagene alleges that Takara transacted business in Maryland when it sold biotechnology into the stream of commerce, knowing that research centers such as the National Institute of Health would be likely to purchase the technology. Pl's. Opp. at 16. Stratagene argues that "Takara need only have a relationship with a distribution system such that Takara could reasonably anticipate its products being shipped, sold or offered for sale, by any member of the distribution channel into a market that includes the forum state." Id. According to Stratagene, Takara's website sales

17

made the infringing product available through an "established
distribution channel" such that the infringing product could
have been sold into Maryland.  Id. at 17, Pl.'s Exhs. A, B, D,
printed versions of the websites on which Takara's products
may be purchased.

Stratagene cites Beverly Hills Fan Co. v. Royal Sovereign
Group, 21 F.3d 1558 (Fed. Cir. 1994), to support its stream of
commerce argument.  In Beverly Hills Fan, the plaintiff was an
American fan company, and the defendants were a Chinese
manufacturing company and an American distributer.  The
principal issue decided in Beverly Hills Fan was, "whether the
Due Process clause of the Federal Constitution or specific
limiting provisions in Virginia's long-arm statute preclude
the exercise of jurisdiction in a case in which an alleged
foreign infringer's sole contact with the forum resulted from
indirect shipments through the stream of commerce."  Id. at
1564.  The court found that "defendants . . . placed the
accused fan in the stream of commerce, they knew the likely
destination of the products, and their conduct and connections
with the forum state were such that they should have
reasonably anticipated being brought into court here."  Id. at
1566.  Similarly, Stratagene argues that "Takara has taken
affirmative steps to market and sell its products in this

18

district--establishing jurisdiction." Pl.'s Opp. at 16.
Further, "Takara should have reasonably anticipated that the
presence of research centers such as the NIH in Maryland would
lead to its products being shipped, sold or offered for sale
or used in Maryland." Id.

According to Stratagene, Takara maintains a distribution
network through at least three companies[10] for the purpose of
distributing their products throughout the United States and
in Maryland. Id. at 17. At least one sale was made in
Maryland, when a scientist at the National Institute of Health
("NIH"), in Bethesda, Maryland bought the allegedly infringing
product online. Pl's. Exh. C, declaration of Lynn Hudson,
PhD.

The Federal Circuit found, in <u>Beverly Hills Fan</u>, that,
"[e]conomic loss occurs to the patent holder at the place
where the infringing sale is made because the patent owner
loses business there." <u>Beverly Hills Fan</u>, 21 F.3d at 1571.
"In a case such as this, the situs of the injury is the
location, or locations, at which the infringing activity
directly impacts on the interests of the patentee, here the
place of the infringing sales in Virginia." Id. This Court

---

[10] Takara Mirus Bio; Fisher Scientific International; and
Serologicals Corporation. Pl.'s Opp. at 17.

agrees with the Federal Circuit and concludes that if Takara's products were purchased in Maryland, Stratagene suffered injury in Maryland.

Based on the Maryland Court of Appeals' interpretation of its long-arm statute; Stratagene's exhibits of websites offering Takara's infringing product for sale; the purchase of the allegedly infringing product by a scientist in Maryland; and Stratagene's allegation that Takara did not have authority to sell the patented invention, it appears Takara's actions constitute an arguable patent infringement in Maryland and that this Court has jurisdiction over Defendants. Therefore, Defendants' Motion to Dismiss for Lack of Jurisdiction will be denied.[11]

Because Defendants' subsequent litigation was recently transferred to this Court from the Southern District of California, Defendants' Motion to Transfer will be denied.

---

[11] Takara also argues that because the title to the biotechnology products passed in Japan, no infringing action arose out of transactions in this district. Defs.' Mot. at 15. Takara does not offer any support for its claim. Additionally, Takara claims that this Court does not have jurisdiction because its alleged infringement "did not have impact here". Id. Again, Takara does not offer any support for its argument.

**IV. CONCLUSION**

For the reasons stated above, Defendants' Motion to Quash Service of Process, Dismiss for Failure to Serve Process, Dismiss for Lack of Jurisdiction, or in the alternative, to Transfer, will be denied.

_____/s/_____

William M. Nickerson
Senior United States District
Judge

Dated: August 15, 2003